# United States Court of Appeals for the Federal Circuit

---

**YALE PRESTON,**
*Plaintiff-Appellant,*

v.

**MARATHON OIL COMPANY AND THOMAS SMITH,**
*Defendants-Cross Appellants,*

**and**

**JOHN DOES 1-10,**
*Defendants.*

---

2011-1013,-1026

---

Appeals from the United States District Court for the District of Wyoming in 08-CV-0239, Judge Alan B. Johnson.

---

Decided: July 10, 2012

---

MITCHELL H. EDWARDS, Nicholas & Tangeman, LLC, of Laramie, Wyoming, argued for plaintiff-appellant. With him on the brief was PHILIP A. NICHOLAS.

SHANE P. COLEMAN, Holland & Hart, LLP, of Billings, Montana, argued for defendants-cross appellants.

_____

Before BRYSON, DYK and O'MALLEY, *Circuit Judges*.

O'MALLEY, *Circuit Judge*.

DECISION

This case presents the question of whether Plaintiff-Appellant Yale Preston ("Preston") owns United States Patent Nos. 6,959,764 ("the '764 patent") and 7,207,385 ("the '385 patent"), or whether he assigned rights in those patents to Defendant-Cross-Appellant Marathon Oil Company ("Marathon") pursuant to an employment agreement entered into shortly after he began work as an at-will employee. In the alternative, Marathon asserts that it has a common law shop right to use the invention or otherwise owns the invention because Marathon Engineer Thomas Smith, one of the defendants in this action, is a co-inventor.

Following several summary judgment motions and a bench trial, the district court entered the following judgments relevant to this appeal: (1) declaring that Preston is the sole inventor of the '385 patent and that Smith was misjoined as an inventor; (2) ordering the PTO to issue a new certificate reflecting that Preston is the sole inventor of that patent; (3) declaring Marathon the owner of the '764 and '385 patents pursuant to Preston's employment agreement and that Preston is in breach of the agreement for failing to assign his rights, as he promised to do. The district court also entered summary judgment in favor of Marathon on its shop right claim, finding that, even if Marathon did not own the rights to the patents—by assignment or otherwise, it had a shop right to practice the inventions reflected therein.

On appeal, Preston challenges the district court's summary judgment ruling regarding Marathon's asserted shop right and the post-trial judgment regarding the assignment of his ownership interest in the relevant technology to Marathon. We affirm-in-part and vacate-in-part. We affirm the district court's judgment that Preston assigned his rights in the '385 and '764 inventions to Marathon pursuant to his employment agreement with Marathon. Because that assignment was automatic, however, we vacate the district court's judgment that Preston is in breach of that agreement. For the reasons explained below, we do not reach the lower court's other judgments.

BACKGROUND

1. Preston's Employment Agreements

In a letter dated February 22, 2001, Pennaco Energy, Inc. ("Pennaco"), a wholly-owned subsidiary of Marathon (collectively, Pennaco and Marathon are referred to as "Marathon"), offered employment to Preston as a relief pumper in Marathon's coal bed methane well operation in the Powder River Basin in northeastern Wyoming. In addition to describing Preston's proposed responsibilities, compensation, and benefits, the letter indicated that Preston was being hired "under the policy of 'employment at will' whereby you or the Company is free to terminate the employment relationship at any time and for any reason without cause or liability other than as prescribed by law." Preston countersigned the letter on February 27, 2001.

Preston started work for Marathon sometime in March 2001, although there is a factual dispute as to the

precise date.[1]  On April 5, 2001, Preston signed a document entitled Marathon Oil Company and Subsidiaries Employee Agreement (the "April Employee Agreement"). Brenda Williams signed on behalf of Marathon on the same date.  The parties agree that the April Employee Agreement was executed *after* Preston began employment and constitutes a separate employment document from the February letter.  The April Employee Agreement contained the following provisions relevant to this dispute:

## 1.  Definitions

**         ** *    *

(d)  "Intellectual Property" means all inventions, discoveries, developments, writings, computer programs and related documentation, designs, ideas, and any other work product made or conceived by EMPLOYEE during the term of employment with MARATHON which (1) relate to the present or reasonably anticipated business of the MARATHON GROUP, or (2) were made or created with the use of Confidential Information or any equipment, supplies, or facilities of the MARATHON GROUP.  Such property made

---

[1]  Preston contends that he began work on March 1, 2001.  After a bench trial, the district court in this case made a factual finding that Preston began employment with Marathon on March 30, 2001. *See Preston v. Marathon Oil Co.*, Case No. 08-cv-239, slip op. at 3 (D. Wyo. Aug. 10, 2010) ("Findings of Fact and Conclusions of Law").  Though Preston disputes this finding, we express no opinion on its propriety because resolution of this factual dispute is not necessary to resolve the appeal before us.

or conceived by EMPLOYEE (or for which EMPLOYEE files a patent or copyright application) within one year after termination of employment with MARATHON will be presumed to have been made or conceived during such employment.

** * *

**3. Disclosure and Assignment of Intellectual Property.**

EMPLOYEE agrees to promptly disclose to MARATHON and does hereby assign to MARATHON all Intellectual Property, and EMPLOYEE agrees to execute such other documents as MARATHON may request in order to effectuate such assignment.

**4. Previous Inventions and Writings.**

Below is a list and brief description of all of EMPLOYEE'S unpatented inventions and unpublished writings. MARATHON agrees that such inventions and writings are NOT Intellectual Property and are NOT the property of MARATHON hereunder. If no listing is made, EMPLOYEE has no such inventions or properties.

Under Paragraph 4, Preston wrote "CH4 Resonating Manifold."[2]

---

[2] $CH_4$ is the chemical formula for methane; as described below, the parties dispute whether "CH4 Resonating Manifold" refers to the claimed invention, or another apparatus.

Although the agreement provides that it "shall be governed and construed in accordance with Ohio law," both parties agree that Wyoming law applies pursuant to the appropriate choice of law rules. It is undisputed that Marathon did not provide any additional consideration to Preston for signing this document beyond his continued employment by Marathon.

## 2. The Patented Technology

The technology at issue relates to the improvement of machinery used to extract methane gas from water-saturated coal in a coal bed methane gas well. One way to extract the gas is to pump water out of a coal seam aquifer, which relieves the pressure holding the methane and allows the methane to escape up the well. The wells include an inner tubing that runs through the center of the well casing to the surface of the coal formation. Water is pumped up through the inner tubing, allowing methane gas to be produced through the "annulus" of the well, or the area surrounding the inner tubing inside the well casing. Once the methane reaches the top, it is collected by gathering lines at a "manifold," from which it is transferred through downstream market pipelines.

One problem that occurs in coal bed methane gas wells is that water columns form in the annulus, which is the path by which gas flows to be released from the well. The water can push the gas down into the well bore and cause gas to enter the "water conduit," which causes what is known as "gas locking." "Gas locking" is undesirable because it makes the pump less efficient and causes the pump to age quickly with less water in the pump for lubrication and cooling purposes. The invention at issue in this case includes the placement of baffle plates in the annulus of the well. The baffle plates contain holes that

function to separate the water and gas, thereby allowing the gas to escape more easily.

Figure 1 of the '764 patent is a diagram of a typical coal bed methane well.



FIG. 1

In this diagram, the pump **30** pumps water **40** from the well bore **28** out of the well through the water conduit **32**, which reduces pressure on the gas **42** and allows it to escape through the gas flow path or annulus **44**. The "manifold" would be the portion above the surface that collects gas from several wells into a single gathering line.

### 3. Installation of Preston's Baffle System

In August 2002, Preston was promoted to SCADA Operator,[3] a position which involves collection of raw well data, such as gas production levels and liquid levels. Around that time, Preston first raised the idea of using baffles to reduce water in a methane well annulus to a co-employee, Jeb Beachem. Preston showed him a "conceptual" drawing of his baffle system. Beachem suggested Preston share this idea with Preston's supervisor, Chuck Cornelius, who put Preston in touch with Marathon Engineer Thomas Smith.

Over the 2002 Thanksgiving weekend, Preston created two-dimensional drawings of his baffle plates using a company computer. In December 2002, Preston met with Smith and discussed his baffle system.[4] Thereafter, Preston hired a company on Marathon's behalf to make baffle plates to begin installation in Marathon's wells.

---

[3] SCADA stands for Supervisory Control and Data Acquisition, and relates to a system that permits supervisory control of certain aspects of the various wells being operated.

[4] The parties dispute whether this conversation with Smith was a collaboration, during which Smith added value to the patented system, or was simply a discussion during which Preston laid out his invention for Smith. Because we do not analyze the propriety of the district court's ruling on inventorship, we do not resolve this dispute.

Preston contends he only ordered 12 baffle plates, but the district court found that, in fact, 40 baffle plates were ordered. Supporting this finding is an invoice addressed to Preston identifying 40 baffle plates that were purchased for the price of $3,157.50, which Marathon paid.

Preston personally participated in the installation of his baffle system in three wells from January 31, 2003 through February 23, 2003. Preston's employment with Marathon ended effective April 15, 2003. Between April 2003 and July 11, 2003, Marathon installed Preston's baffle system in eight additional wells. Preston contends that he did not consent to or authorize the installation of his system in the eight additional wells, and the district court found that undisputed evidence shows that Preston was not aware of the installation in the other eight wells. Marathon removed the baffles in all eleven wells between the end of 2003 and May 2006.

### 4. Evidence of Preston's Development of the Baffle System

As discussed below, the parties dispute the extent to which Preston developed his baffle system before coming to work at Marathon. Preston himself offered inconsistent testimony at trial as to when he first arrived at the idea, saying at one point he invented it in 2001 in the six weeks before he joined Marathon and, at another point, that he may have invented it one to two years before joining Marathon. There is no dispute, however, that he never "made" the invention (i.e., physically constructed it) before joining Marathon. Preston claims to have drawn a "handful" of hand-drawn sketches of his invention before joining Marathon, but says he lost or misplaced them in 2005 or 2006. Preston also prepared some conceptual sketches during his employment with Marathon that he

showed to his co-employees. Preston, however, never discussed a "resonating manifold" with anyone at Marathon or mentioned that the baffle plates he had drawn were part of a "resonating manifold." The only sketch of Preston's invention in evidence was one Preston drew during a break at his deposition in August 2008. He claims that it is identical to the one he drew before joining Marathon, but, as discussed below, the district court found that his testimony on this point was not credible.

### 5.    The '764 and '385 Patents

Soon after installation of Preston's baffle system began, and while Preston still was employed at Marathon, Smith initiated Marathon's internal patenting process. On February 3, 2003, he emailed a colleague at Marathon to begin the process, explaining that Preston "has designed and installed a prototype downhole gas separator baffle assembly that appears to be patentable and could be a significant new technology breakthrough in the Powder River Basin for coalbed [n]atural gas production." *Findings of Fact and Conclusions of Law* at 10-11. The district court found that Preston knew that the invention was going through Marathon's patenting process, and "at no time did Preston object to Smith being a co-inventor during Marathon's patenting process." *Id.*

About two months after his employment at Marathon ended, on June 5, 2003, Preston filed his own patent application covering his baffle system. That application ultimately issued on November 1, 2005, as the '764 patent. Preston is listed as the sole inventor on the '764 patent.

On June 14, 2004, Marathon filed a patent application that ultimately issued on April 24, 2007, as the '385

patent. The '385 patent names both Smith and Preston as co-inventors. The '385 patent initially was rejected for obviousness and double-patenting over the '764 patent. That rejection was withdrawn, however, when Marathon amended the patent to clearly define "the annulus between the casing and a tubular, which are neither disclosed or [sic] suggested in the prior art of record." The examiner noted that "the '764 patent does not claims [sic] the baffles being positioned in the annulus between the casing and the tubular," i.e., does not claim surface baffles.

6.      Procedural History

In March 2007, Marathon filed a lawsuit in Texas state court alleging that Preston breached his employee agreement by refusing to assign his '764 patent to Marathon. The lawsuit was dismissed for lack of personal jurisdiction. Marathon then filed suit in Wyoming state court alleging the same claim for breach. Preston counterclaimed for patent infringement and conversion.

In November 2008, Preston filed a complaint in the U.S. District Court for the District of Wyoming,[5] asserting counts for (1) patent infringement; (2) a declaration that Preston is the sole inventor of the '385 patent; (3) unjust enrichment (based on Marathon's use of his invention); (4) conversion (same); (5) breach of implied contract (based on an alleged implied contract that Marathon would compensate Preston for his invention); and (6) misappropriation of trade secrets. Marathon raised several affirmative defenses and counterclaimed for a declaration that Preston has agreed to assign his rights in the '764

---

[5] The Wyoming state court action has been stayed pending the outcome of this case.

patent to Marathon. Smith also counterclaimed, seeking a declaration that he is the co-inventor of the '764 patent.

Following five summary judgment motions, the district court issued an order on December 28, 2009, making the following rulings: (1) Marathon acquired a shop right to Preston's baffle system invention and, therefore, is entitled to summary judgment on Preston's patent infringement claim; (2) Preston's claims for unjust enrichment, conversion, and trade secret misappropriation are barred by the shop right doctrine or because they are untimely; (3) issues of fact preclude judgment on Preston's claim that he is the sole inventor of the '385 patent; (4) issues of fact preclude judgment for defendants on Preston's claim for breach of implied contract; and (5) summary judgment as to whether Preston's employment agreement is valid is inappropriate.

Following a bench trial on the remaining issues, the district court found that Preston was the sole inventor of the '385 patent but that Preston was required to assign his interest in the '764 and '385 patents to Marathon pursuant to his employment agreement. It also found that Preston was in breach of that agreement for not doing so.

On appeal, Preston challenges the district court's summary judgment ruling as to Marathon's shop right and the judgment as to ownership. Marathon filed a "protective" cross-appeal as to inventorship of the '385 patent, which it advises we need not address if the district court's judgment as to ownership of the patents is affirmed.

After oral argument, we certified a question to the Wyoming Supreme Court, inquiring whether, under

Wyoming law, continuing the employment of an existing at-will employee constitutes adequate consideration to support an agreement containing an intellectual property-assignment provision. On May 10, 2012, the Wyoming Supreme Court answered "yes," continuation of at-will employment is sufficient consideration for an agreement requiring assignment of intellectual property. *Preston v. Marathon Oil Co.*, 277 P.3d 81, 82 (Wyo. 2012).

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Preston primarily argues on appeal that he did not assign his rights in the '764 or '385 patents to Marathon because (1) the April 5, 2001 Employee Agreement is invalid for lack of consideration, and (2) even if enforceable, did not function to assign rights in his invention to Marathon. Because both of these arguments fail, we do not reach Preston's argument that the district court erred in finding that Marathon owns a shop right to use his invention. Likewise, because Marathon owns the inventions at issue pursuant to the April Employee Agreement, we need not address Marathon's "protective" cross-appeal challenging the district court's finding that Smith was misjoined as an inventor of the '385 patent. Answer Brief of Defendants/Cross-Appellants at 3 ("Marathon has filed a protective cross-appeal as to inventorship of the '385 patent, an issue that this court need not reach if it affirms the district court's findings as to ownership.").

### 1. Preston's Employment Agreement is Valid and Enforceable

Preston first argues that he did not assign his rights in his baffle system to Marathon because the April Employee Agreement, which contains the intellectual property assignment provision on which Marathon relies, is unenforceable for lack of consideration. According to Preston, Pennaco's offer letter of February 22, 2001, which Preston signed on February 27, 2001, constituted an express, written employment agreement that embodied the terms of his employment. He contends that, under Wyoming law, the April Employee Agreement was not a valid, enforceable modification of those terms absent additional consideration beyond continued employment.

The district court rejected Preston's argument below, finding that the April Employee Agreement was a valid, binding, condition of Preston's unilateral employment with Marathon. In its summary judgment ruling, the district court found that, under Wyoming law, consideration is not required to modify the terms of an at-will employment agreement. Preston subsequently requested that the district court certify the question raised under Wyoming law to the Wyoming Supreme Court, contending that the district court failed to consider *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531 (Wyo. 1993). In *Hopper*, the Wyoming Supreme Court found that additional consideration was required, even in at-will employment relationships, to support a non-competition provision added during the term of employment. *Id.* at 541. The district court denied Preston's request, distinguishing *Hopper* on grounds that it involved a non-compete provision, which the court found was disfavored under Wyoming law and entailed different considerations than an intellectual property assignment provision.

After oral argument, we certified the question to the Wyoming Supreme Court and on May 10, 2012, the Wyoming Supreme Court explained that additional consideration beyond continued employment is not necessary to support an intellectual property assignment agreement. *Preston*, 277 P.3d at 82. Describing its ruling in *Hopper*, the Wyoming Supreme Court stated that "public policy favored separate consideration and continued at-will employment was not sufficient consideration to support [a non-compete] agreement . . . based, in part, on the sanctity of the right to earn a living." *Id.* at 86. The court acknowledged, however, "that there is a fundamental difference between non-competition agreements and intellectual property assignment agreements." *Id.* at 87. The court therefore determined that:

> [T]he stability of the business community is best served by ruling, consistent with our at-will employment jurisprudence, that no additional consideration is required to support an employee's post-employment execution of an agreement to assign intellectual property to his employer. If the employee does not agree to that modification of the terms of his employment, he can terminate the relationship without any penalties.

*Id.* at 88.

From this ruling, it is clear that the April Employee Agreement is valid and enforceable with only continued employment as consideration and that the district court was correct to predict that the Wyoming state courts would so hold.

## 2.  Preston Assigned His Rights in the '764 Patent and '385 Patent to Marathon

We therefore turn to the question of whether the April Employee Agreement functioned to assign rights to Marathon in Preston's invention.  Preston primarily contends that his invention is not "Intellectual Property" as defined in Paragraph 1(d) of the April Employee Agreement under the plain language of the agreement because he conceived of it *before* working at Marathon.  According to Preston, "[i]f any element was conceived prior to or after Preston's term of employment with Marathon, then Marathon is not entitled to an assignment of the '764 patent or '385 patent."  Appellant's Opening Brief at 43.  Preston alternatively asserts—assuming his invention is considered "Intellectual Property" under Paragraph 1(d)—that he expressly excluded his invention from the subject of the assignment clause by writing "CH4 Resonating Manifold" in the line under Paragraph 4 for "Previous Inventions and Writing." *Id.* at 43-44.

Preston's argument with respect to Paragraph 1(d)—that the '764 and '385 patents are not "Intellectual Property" under the April Employee Agreement—is inconsistent with a plain reading of the agreement.  Both Preston and Marathon agree that the April Employee Agreement must be construed according to state law.  *See Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, 561 F.3d 1340, 1343 (Fed. Cir. 2009) ("Construction of patent assignment agreements is a matter of state contract law.") (quoting *Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1370 (Fed. Cir. 2008)).  Under Wyoming law, "[i]f an agreement is in writing and the language is clear and unambiguous, the intention is to be secured from the words of the agreement." *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781, 790 (Wyo. 1989) (quoting *Nelson v. Nelson*, 740 P.2d

939, 940 (Wyo. 1987)).  In such cases, "the writing as a whole should be considered, taking into account relationships between various parts." *Id.*

The district court determined that "invention," as recited in the April Employee Agreement, requires both conception and reduction to practice. *Findings of Fact and Conclusions of Law* at 17-18.  Based on its finding that Preston "had little more than a vague idea before his employment with Marathon began," the court concluded, "as a matter of law, that Mr. Preston did not 'invent' the CH4 resonating manifold, or any component thereof, until after his employment with Marathon began."  *Id.* at 18. The district court then determined that Preston "'invented' the baffle system during his employment with Marathon," and, as a result, "is required by the employee agreement to assign all interest in the '764 and '385 patents to Marathon." *Id.*  While the district court premised this finding, in part, on an incorrect interpretation of patent law as requiring both conception and reduction to practice for "invention," the ultimate conclusion regarding the coverage of Paragraph 1(d) is correct.  The plain language of Paragraph 1(d) of the agreement indicates that any "invention" that is "made *or* conceived" by an employee while employed at Marathon constitutes "Intellectual Property" and is therefore automatically is assigned to Marathon under Paragraph 3.  (emphasis added).  Thus, if Preston's invention was not both made *and* conceived prior to his employment, it constitutes "Intellectual Property" under Paragraph 1 of the April Employee Agreement.  Preston argues only that he conceived of his baffle system prior to employment at Marathon.

As discussed above, all evidence supports the conclusion that no physical manifestations or detailed drawings

of the patented baffle system existed prior to Preston's employment at Marathon. Preston created two-dimensional drawings of the baffle system, ordered the baffle plates and personally participated in the first installation of those baffles in Marathon wells after his employment with Marathon began. As the district court found, the invention was not reduced to practice (i.e., not made) until—at the earliest—late summer 2002 and was not installed until January 2003, well after Preston's 2001 start date with Marathon. *Findings of Fact and Conclusions of Law* at 9-10. Because there is no dispute that Preston did not *make* his invention prior to his employment with Marathon, the '764 patent and '385 patent are properly included as "Intellectual Property" under the plain language of Paragraph 1(d).

Preston next argues that, even if the invention embodied in the '385 and '764 patents is "Intellectual Property" under Paragraph 1(d), he had the right to and did exclude that invention from the April Employee Agreement under Paragraph 4. He contends that Paragraph 4 removes from the scope of Paragraph 1(d) certain intellectual property that might otherwise be covered thereby— i.e., any "invention" listed therein, regardless of when "made." Because Preston listed "CH4 Resonating Manifold" in Paragraph 4, he contends it is an "invention" that is not subject to assignment under the agreement.

Here, the parties dispute a number of points. First, Marathon contends that the invention covered by the patents is not a "CH4 Resonating Manifold." Second, Marathon contends that, before something can be considered an "invention" under Paragraph 4, it must have been conceived *and* reduced to practice before employment so as to avoid an inconsistency with the scope of Paragraph 1. Next, Marathon contends that, even if all that were

required under the agreement is "conception" pre-employment, the level of conception must be sufficient to satisfy our case law—i.e., the idea must be "definite and permanent enough that one skilled in the art could understand the invention. . . ." *Univ. of Pittsburgh v. Hedrick*, 573 F.3d 1290, 1298 (Fed. Cir. 2009). On this point, moreover, Marathon urges us to demand that the inventor "prove his conception by corroborating evidence, preferably by showing contemporaneous disclosures." *Id.*[6] Preston disagrees on all fronts.

Preston asserts that the "CH4 Resonating Manifold" is, in fact, the moniker he chose for his baffle system. He next asserts that it is not unreasonable to assume that the exclusion in Paragraph 4 is broad enough to cover items which were conceived and not made—i.e., that, like Paragraph 1(d), the exclusion of Paragraph 4 should be read in the disjunctive. Finally, Preston asserts that our case law regarding conception should not govern interpretation of the meaning of "invention" as used in an employee agreement governed by state law; he asserts, rather, that "invention" and "conception" should be interpreted broadly to include more than just the meaning of those terms as used in patent law. In support of this argument, Preston contends that "inventions" should be read alongside "less tangible intellectual property, i.e. discoveries, developments, writings, designs, and ideas," and that it is clear from the context of the agreement "that 'inventions' is not limited to patentable inven-

---

[6] Conception for patent law purposes is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)).

tions[.]" Appellant's Opening Brief at 41. Preston also cites to our decision in *AT&T Co. v. Integrated Network Corp.*, 972 F.2d 1321, 1325 (Fed. Cir. 1992), in which we held that the term "conceived" in a patent assignment agreement did not mean that that the plaintiff's breach of contract claim arose under the patent laws, such that we would have jurisdiction over the appeal. From this, Preston asserts that a "plain and ordinary" meaning of "to form in the mind (as a concept or idea)" is appropriate for the term "conceive."

We need not resolve these disputes to conclude that the district court's judgment in favor of Marathon regarding the assignment provision in the April Employee Agreement should be affirmed. Even if we assume state law governs the issue and that state law would take a broader view of conception than would be applied normally in the patent context, we still find that an invention necessarily requires at least some definite understanding of what has been invented. The evidence here does not satisfy even that loose standard and the record supports the conclusion that Preston was not in possession of an excludable invention before he began employment at Marathon.

Indeed, the district court's factual finding that "Mr. Preston's testimony regarding the level of development of the CH4 resonating manifold is not credible, and that he had, at most, little more than a vague idea before his employment with Marathon began" disposes of this question.[7] On appeal from a bench trial, we review a district court's findings of fact for clear error. *Golden Blount,*

---

[7] We recognize that this statement appears in the district court's "Conclusions of Law," but the context makes clear that this is a factual finding.

*Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1058 (Fed. Cir. 2004). A factual finding is clearly erroneous if, despite some supporting evidence, we are left with the definite and firm conviction that a mistake has been made. *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 395 (1948). No such mistake was made here, and we see no reason to disturb the district court's factual findings, especially when they are well supported in the record. As the district court found, Preston provided no evidence—other than his own testimony—that corroborated his claim of invention prior to employment with Marathon. In contrast, substantial testimony was presented that contrasted the "crude" drawings shown to his co-workers at Marathon years after the invention was purportedly completed and the drawing done by Preston at his deposition. Preston admits, moreover, that he never discussed a "resonating manifold" with his co-employees or mentioned that the baffle plates he had drawn were part of a "resonating manifold," and made no prototype prior to his arrival at Marathon.

Based on the district court's findings of fact, we agree that Preston could not demonstrate invention prior to employment at Marathon. And we find this to be so even under Preston's broad reading of the term "conceive." Simply, Preston's uncorroborated, "little more than a vague idea" does not meet even this standard. If we were to accept Preston's argument that "conceive" can include having "little more than a vague idea" and that an employee need offer no proof of exactly what that idea was, Paragraph 1 of the April Employee Agreement would be rendered meaningless. This produces an absurd result that is contrary to the principles of contract interpretation under Wyoming law. *Schaffer v. Standard Timber Co.*, 331 P.2d 611, 616 (Wyo. 1958) (contract will not be presumed to have imposed an absurd condition). Thus,

Preston's notation in Paragraph 4 did not remove anything from the scope of the "Intellectual Property" covered in Paragraph 1(d).

We therefore hold that the district court properly included the '764 patent and '385 patent in the scope of "Intellectual Property" under Paragraph 1(d) and did not exclude the same under Paragraph 4. Because the assignment clause in the April Employee Agreement states that the employee agrees to "hereby assign" all "Intellectual Property," it is an express assignment of rights in future inventions that automatically assigned rights to Marathon without the need for any additional act. *See DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) (if the contract expressly grants rights in future inventions, no further act is required once an invention comes into being, and the transfer of title occurs by operation of law). Accordingly, we find that Marathon owns the rights to the '385 patent and '764 patent.

Additionally, although neither party raises this point, the district court's judgment that Preston breached his employment agreement by not assigning his patent rights to Marathon is inconsistent with the automatic assignment of the '385 patent and '764 patent to Marathon that occurred under the April Employee Agreement. We therefore vacate the district court's finding that Preston breached his agreement by failing "to execute an assignment of his rights" because such an execution is not required here.

CONCLUSION

For the reasons stated above, we affirm the district court's judgment that Preston assigned his rights in the

'385 and '764 inventions to Marathon pursuant to the April Employee Agreement. Because that assignment was automatic, we vacate the district court's judgment that Preston is in continued breach of the agreement for failure to assign his rights. In light of these rulings, and the representations made by the parties, there is no reason for this court to reach the questions of inventorship or Marathon's shop rights.

**AFFIRMED IN PART, VACATED IN PART.**