Concurring opinion filed by Circuit Judge O’MALLEY.
PER CURIAM.
Vapor Point, L.L.C., Keith Nathan (“Nathan”), and Kenneth Matheson (“Mathe-son”) (collectively “Vapor Point”) sued Elliott Moorhead (“Moorhead”), NanoVapor Fuels Group, Inc., and Bryant Hickman (“Hickman”) (collectively “NanoVapor”) in the United States District Court for the Southern District of Texas, seeking to have Nathan and Matheson recognized as joint inventors under 35 U.S.C. § 256 on NanoVapor’s U.S. Patent Nos. 7,727,310 (“the '310 patent”) and 8,500,862 (“the '862 patent”). NanoVapor responded by suing Vapor Point, seeking to have Moorhead recognized as a joint inventor under 35 U.S.C. § 256 on Vapor Point’s U.S. Patent Nos. 7,740,816; 7,803,337; 8,337,585; 8,337,-604; 8,337,763 and for declaratory relief regarding inventorship of NanoVapor’s '310 and '862 patents. After a four-day eviden-tiary hearing, the district court issued an order granting Vapor Point’s motion for correction of inventorship and denying each of NanoVapor’s motions. Vapor Point moved for exceptional case status and attorneys’ fees. The district court issued a final judgment correcting inventorship, dismissing the action with prejudice, and denying Vapor Point’s motion for exceptional case status and attorneys’ fees.
NanoVapor appeals the district court’s order on inventorship and its dismissal of the case. Vapor Point cross-appeals the same order to the extent it holds that the case is not exceptional and that an award of attorneys’ fees is not warranted. We find that the district court did not err in dismissing the case after determining in-ventorship, especially in light of NanoVa-por’s concession that a determination of inventorship would resolve the case. We further find that the district court did not abuse its discretion in denying Vapor Point’s motion for exceptional case status and attorneys’ fees. Therefore, we affirm.
BACKGROUND
The factual and procedural history in this case is confusing, but is important to the issues we resolve. We do our best to lay it out with clarity.
The patents-in-suit are generally directed “to the removal of volatile fuel vapors, also known as volatile organic compounds (‘VOCs’), from storage tanks and other holding vessels, generally in the oil and gas industry.” Inventorship Order at 3, Vapor Point, L.L.C., et al. v. Moorhead, et al., No. 4:11-CV-04639, 2013 WL 11275459 (S.D. Tex. Mar. 13, 2015), ECF No. 321 (hereinafter “Inventorship Order”). “EPA and state ‘clean air’ regulations regulate the percentage of contaminates that may be discharged” into the atmosphere. Id. at *2. The patents-in-suit “address this problem by capturing and recovering the fuel vapors.” Id.
“NanoVapor is an industry leader in the field of [VOC] containment, including a process called Vapor Suppression System developed by Moorhead that aims to control or eliminate combustible and toxic gases in fuel storage and transfer operations.” Id. at *3-4. After working with Moorhead to help market this technology, Nathan became Chief Operating Officer of NanoVapor in 2007. Id. at *4.[1] NanoVapor later hired Matheson to help with the “commercial embodiment” of the technolo *1346 gy being developed. Id. Moorhead filed provisional patent application 60/871/766 on December 22, 2006, claiming the vapor suppression system that is the subject of NanoVapor’s '310 patent. The '310 patent claims priority to this application. The parties disagree over whether Nathan was aware at the time of the progress of the patent application. Id. at *4.
NanoVapor alleged that Nathan and Matheson “plotted to steal [NanoVapor’s] technology and destroy [NanoVapor’s] business when [Nathan and Matheson] developed the commercial embodiment of NanoVapor’s patent-pending concept.” Id. According to NanoVapor, “an outside group conducted due diligence testing that exceeded expectations,” after which Nathan and Matheson “decided to steal the technology and associated trade secrets.” Id. NanoVapor asserts that Nathan and Matheson “each requested a 20% stake in NanoVapor, which [NanoVapor] rejected.” Id.
In contrast, Vapor Point alleges that “the '310 patent [NanoVapor] filed for on December 18, 2007 wrongfully incorporated, disclosed, and claimed all of Nathan and Matheson’s conceptual and inventive contributions.” Id. The '862 patent, according to Vapor Point, similarly misappropriated Nathan and Matheson’s work. Id. Nathan and Matheson allege that they are the true inventors of the technology disclosed in the '310 patent “because Defendant Moorhead brought on Nathan and Matheson to help him reengineer the system and bring it to market but that Moor-head wrongfully filed for the '310 patent without consent, notice, or compensation to Nathan or Matheson.” Id. at *4. Based on the allegations, Vapor Point asked that the district court correct inventorship of the '310 and '862 patents to add their names to both, or possibly even substitute their names for Moorhead’s on both.
For its part, NanoVapor asked the district court to alter the inventorship of Vapor Point’s five patents to include Moor-head “because the Vapor Point patents are based on Defendant Moorhead’s conceptions in the '310 patent.” Id.
In addition to its requests to correct the inventorship of NanoVapor’s patents, Vapor Point also asserted a number of state law claims against NanoVapor: common-law fraud, fraud by nondisclosure, unjust enrichment, tortious interference, misappropriation of trade secrets, and the Texas Theft Liability Act. First Amended Complaint at ¶¶ 61-104 (Counts III-VIII), Vapor Point (S.D. Tex. Aug. 16, 2013), ECF No. 151. NanoVapor, in turn, asserted a number of affirmative defenses to the claims in Vapor Point’s First Amended Complaint, including that “[Vapor Point] cannot prevail because [Vapor Point has] an obligation to assign any invention to NanoVapor Fuels Group, Inc.” Original Answer to First Amended Complaint at ¶ 116, Vapor Point (S.D. Tex. Aug. 30, 2013), ECF No. 155; see also id. at ¶ 117 (specifying that an obligation to assign arises from an alleged employment of Nathan and Matheson by NanoVapor). In its counterclaim NanoVapor also asserted infringement of the '310 patent and eight state law claims: misappropriation of trade secrets, the Texas Theft Liability Act, fraud, breach of fiduciary duty, tortious interference with business relationships, tortious interference with prospective business relationships, breach of contract, and unjust enrichment. Fourth Amended Counterclaim at ¶¶ 83-138, Vapor Point (S.D. Tex. May 14, 2014), ECF No. 212.
On June 25, 2014, the district court issued an order denying NanoVapor’s motion for an evidentiary hearing on inven-torship. Order, Vapor Point (S.D. Tex. June 25, 2014), ECF No. 241. The district court reasoned that, “[b]y requesting find *1347 ings of fact and conclusions of law relating only to inventorship under 35 U.S.C. § 256, both parties are essentially requesting that this Court bifurcate the in-ventorship claims from the state law and infringement claims and make an early determination on the inventorship issues.” Id. at 1. Because “the state law causes of action share a common factual core with the inventorship claims and judicial determination of the inventorship issues at [that] time would deprive the parties of their right to a jury trial,” the district court denied the parties’ request for an evidentiary hearing. Id. at 2.
NanoVapor then filed a notice with the district court dismissing its state law claims “with prejudice to refiling.” Notice of Nonsuit of State Law Claims, Vapor Point (S.D. Tex. Aug. 1, 2014), ECF No. 254. In that notice, NanoVapor asserted that, “[i]n response to [NanoVapor] non-suiting their state law claims, [Vapor Point has] agreed to nonsuit” its state law claims. Id. at 2. “After [Vapor Point’s] concurrent nonsuit of the state law claims only claims related to inventorship and infringement will remain before the Court.” Id. In so doing, NanoVapor explicitly “requested] the Court to decide the inventorship issues as there is no right to a jury trial on contested fact issues related to inventorship.” Id. Accordingly, the district court dismissed all of the state law claims pled by either Vapor Point or Nano-Vapor, with prejudice. See Order on Notice of Nonsuit of State Law Claims, Vapor Point (S.D. Tex. Aug. 11, 2014), ECF No. 261.
“[S]ection 256 ... explicitly authorizes judicial resolution of co-inventorship contests over issued patents.” MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989). Consistent with § 256, the district court held a four-day evidentiary hearing to determine inventor-ship of the patents-in-suit. After the hearing, the district court issued an order denying NanoVapor’s claims of inventorship and granting Vapor Point’s to the extent Nathan and Matheson sought to be added to the ’310 and ’862 patents as additional inventors. See Inventorship Order at *12.
In that decision, the district court addressed the “four key concepts in the ’310 and ’862 patents”: (1) using biodiesel as a vapor capture medium; (2) removing VOCs from a vessel containing fuel vapors and introducing them into a vapor capture medium (such as biodiesel),; (3) using a parti-culatizer to create micro-sized VOC particles for treatment; and (4) using diffusion plates to distribute micro-sized particles across the vapor capture medium. Id. at *5. The district court found that Nathan contributed to the conception of the first three of these four key concepts and that Matheson contributed to the third and fourth concepts. See id. at *7-11. The district court denied NanoVapor’s claim that Moorhead should be a named inventor on Vapor Point’s patents. See id. at *11-12.
Following the district court’s resolution of the inventorship issues, NanoVapor moved for a new trial “solely addressing] the Court’s closing of the case without allowing a trial on the affirmative defenses,” including any obligation to assign. Na-noVapor’s Motion for a New Trial, Vapor Point (S.D. Tex. Apr. 3, 2015), ECF No. 330. In Vapor Point’s response, it argued that NanoVapor’s motion for a new trial on the affirmative defense of an obligation to assign was improper.
Vapor Point initially asserted a claim for correction of inventorship under § 256 along with its various state law tort claims. Because the latter were dismissed with prejudice, only the federal claim under § 256 remained. Since “an obligation to assign is not an affirmative defense to a cause of action to correct inventorship,” and because only the inventorship claims *1348 remained, Vapor Point argued that the equitable affirmative defense of an obligation to assign also should be dismissed with prejudice. Vapor Point’s Response to NanoVapor’s Motion for New Trial at 6, Vapor Point (S.D. Tex. Apr. 24, 2015), ECF No. 335. Because NanoVapor did not join Nathan and Matheson — now deemed to be two of the inventors of the patents-in-suit — in the infringement claims against Vapor Point, Vapor Point argued that Na-noVapor “d[id] not have standing to pursue [its] claim for infringement of the ’310 patent, eliminating any claim against Vapor Point.” Id. at 9; see also Appellant’s Br. at 13 (“All patent owners must join in a patent infringement suit. NanoVapor did not join Nathan and Matheson in its infringement claim. Therefore, NanoVapor did not have standing to pursue a claim for infringement ■ of the ’310 patent.”) (citing Enovsys LLC v. Nextel Commc’ns., Inc., 614 F.3d 1333, 1341 (Fed. Cir. 2010) (“When a patent is co-owned, a joint owner must join all other co-owners to establish standing.”); 35 U.S.C. § 281). The district court agreed with Vapor Point and dismissed the case. Final Judgment at 2, Vapor Point (S.D. Tex. Aug. 24, 2015), ECF No. 377.
After the court’s order on inventorship, Vapor Point moved for a determination that the case was exceptional, entitling it to attorneys’ fees. See Vapor Point (S.D. Tex. June 16, 2015), ECF No. 347; Vapor Point (S.D. Tex. June 16, 2015), ECF No. 349. The district court, without discussion, denied these motions in its final order. Final Judgment at 2, Vapor Point (S.D. Tex. Aug. 24, 2015), ECF No. 377. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).
Discussion
NanoVapor now appeals, arguing, inter alia, that the district court erred in its determination of inventorship and erred when it dismissed the case without deciding whether Nathan and Matheson had an obligation to assign their inventorship interests to NanoVapor. Vapor Point appeals the district court’s denial of attorneys’ fees and its decision that the case is not exceptional. We address each argument in turn.
A. Inventorship Order
“A person who alleges that he is a co-inventor of the invention claimed in an issued patent who was not listed as an inventor on the patent may bring a cause of action to correct inventorship in a district court under 35 U.S.C. § 256.” Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1357 n.1 (Fed. Cir. 2004). Inventorship is a question of law entitled to de novo review by this court. Gen. Elec. Co. v. Wilkins, 750 F.3d 1324, 1329 (Fed. Cir. 2014). “On appeal from a bench trial, we review a district court’s decision for errors of law and clearly erroneous findings of fact.” Trovan, Ltd. v. Sokymat SA, Irori, 299 F.3d 1292, 1301 (Fed. Cir. 2002); see also Preston v. Marathon Oil Co., 684 F.3d 1276, 1287 (Fed. Cir. 2012). A factual finding is clearly erroneous when, “although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.” United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
NanoVapor argues, inter alia, that the district court’s determinations on inventor-ship were not supported by clear and convincing evidence. See Appellant’s Br. at 23-30.
For the most part, we disagree. Given the evidence adduced, we find that the district court was correct to conclude that both Nathan and Matheson should be listed as inventors on the ’310 patent, which is the only patent asserted in NanoVapor’s infringement claim. All inventors, even those who contribute to only one *1349 claim or one aspect of one claim of a patent, must be listed on that patent. See Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998) (“[A] co-inventor need not make a contribution to every claim of a patent. A contribution to one claim is enough”) (citation omitted). The district court’s findings that Nathan contributed to three of the four key aspects of the invention are supported by substantial evidence. And, substantial evidence supports the district court’s conclusion that Matheson contributed to the conception of the use of diffusion plates, as recited in claims 11 and 12 of the '310 patent. While we agree with NanoVapor that the district court erred in finding that Matheson contributed to the conception of the use of a partieulatizer to create micro-sized VOC particles for treatment and the use of diffusion plates to distribute micro-sized particles across the vapor capture medium, that error does not change the validity of the ultimate judgment because Matheson was still properly found to be an inventor of the diffusion plates.[2]
These findings are sufficient to support the district court’s inventorship judgment. Co-inventors need not “physically work together or at the same time,” “make the same type or amount of contribution,” or “make a contribution to the subject matter of every claim of the patent.” 35 U.S.C. § 116. “[Ijnventorship is determined on a claim-by-claim basis.” Trovan, 299 F.3d at 1302 (citing Ethicon, 135 F.3d at 1460).
Because we find that the district court’s conclusions are supported by substantial evidence for both Nathan and Matheson— for at least one of the claim elements — we affirm the district court’s inventorship determinations with respect to the '310 patent.
B. Obligation to Assign
NanoVapor next claims that the district court erred when it dismissed the action without first determining whether Nathan and Matheson had an obligation to assign their invention to NanoVapor. The district court found that it need not resolve whether there was an obligation to assign the patents because “[a]ll parties understood that the evidentiary hearing would resolve the issue of inventorship and would be dispositive of the remaining infringement claim in the case.” Final Judgment at 2, Vapor Point (S.D. Tex. Aug. 24, 2015), ECF No. 377. In other words, the district court found that NanoVapor had waived its right to ask the court to decide the assignment question. We agree.
While NanoVapor did assert that Nathan and Matheson had an obligation to assign their rights to the invention, it did so only as an equitable affirmative defense to Vapor Point’s state law claims. See Original Answer to First Amended Complaint at ¶¶ 116-17, Vapor Point (S.D. Tex. Aug. 30, 2013), ECF No. 155. As discussed above, these state law claims were dismissed with prejudice. Order on Notice of Nonsuit of State Law Claims, Vapor Point *1350 (S.D. Tex. Aug. 11, 2014), ECF No. 261. The only remaining claims from Vapor Point’s complaint were those seeking a correction of inventorship. And, “[i]t is elementary that inventorship and ownership are separate issues.” Beech Aircraft Corp. v. EDO Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993); see also Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1465 (Fed. Cir. 1998) (“Questions of patent ownership are distinct from questions of inventor-ship.”). “[I]nventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property.” Id. The parties agree that ownership is not an affirmative defense to an inven-torship claim under § 256. See, e.g., Appellant’s Response and Reply Br. at 3 (“ownership is .not an affirmative defense to inventorship”); Oral Arg. at 26:19-27:10, available at http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2015-1801.mp 3 (counsel for Vapor Point arguing that ownership is not a defense to inventor-ship). The voluntary dismissal of the state law claims mooted NanoVapor’s affirmative defense that Nathan and Matheson had an obligation to assign any rights in the '310 patent to NanoVapor.
NanoVapor went further by affirmatively representing to the district court that resolution of the inventorship issue would dispose of the infringement issue. On August 29, 2014, the district court asked Na-noVapor’s counsel whether the trial to determine inventorship would “basically be the entire trial on the merits.” J.A. 1480. Counsel for NanoVapor responded: inven-torship “is ultimately most likely disposi-tive of the other issue, now just infringement, and ultimate willfulness at that point if it’s decided against NanoVapor.” J.A. 1480-81; see also J.A. 392 (August 6, 2014 letter from NanoVapor’s counsel seeking a status conference and representing that “the only two issues remaining are inventorship and infringement.”). In-ventorship is dispositive of infringement if and only if NanoVapor waives its ownership by assignment claim. Ultimately, the district court decided the inventorship issue against NanoVapor when it determined that Nathan and Matheson were co-inventors. NanoVapor’s clear representation that such a determination would be “ultimately most likely dispositive” of the inventorship issue is a waiver of any assertion of ownership of Nathan and Mathe-son’s rights.
The district court did not err, therefore, in dismissing the infringement claim with prejudice because “[a]ll parties understood that the evidentiary hearing would resolve the issue of inventorship and would be dispositive of the remaining infringement claim in the case.” Final Judgment at 2, Vapor Point (S.D. Tex. Aug. 24, 2015), ECF No. 377.
Exoeptional Case AND AttoRneys’ Fees
Vapor Point cross-appeals the district court’s determination that it is not entitled to attorneys’ fees and the case is not exceptional. While we would have preferred a written explanation for its decision, upon review of the record, we do not find that the denial of Vapor Point’s motion was an abuse of the district court’s discretion.
Conclusion
The district court’s ultimate determination on inventorship is supported by substantial evidence. NanoVapor cannot now assert equitable defenses to claims that were voluntarily dismissed. Moreover, Na-noVapor waived its right to pursue ownership under an obligation to assign theory by explicitly representing that resolution of the inventorship issue would resolve the infringement issue. For the reasons discussed above, and because we find each of *1351 NanoVapor’s additional arguments unpersuasive, we affirm.
AFFIRMED

. The parties agree that Moorhead and Nathan were acquainted before Nathan began work with NanoVapor, but disagree regarding the length of their interaction. NanoVapor alleged they met "at an industry conference in 2005” while Vapor Point alleged they "began working [together] ... in the summer of 2006.” Id. at *3-4.

. Matheson admitted on cross-examination that the use of a partieulatizer was conceived before Matheson joined the project, and no other evidence shows that Matheson was involved in or copied on exchanges between Moorhead and Nathan on that topic. While the district court noted that “emails sent from Nathan to Moorhead between January and March of 2007, include the concept of introducing VOCs to the vapor capture medium as micro-sized particles" and that “Nathan's email messages to Moorhead including text like 'Another photo to keep your spirits high!!' and 'pics from lab this AM’ support [Vapor Point’s] theory that Nathan and Matheson conceived of the need for micro-particles of VOCs,” Inventorship Order at.21-22 (emphasis added), the emails do not show that Matheson was copied on these exchanges, or was ever aware of them.