**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF
AMERICA,
    *Plaintiff-Appellee*,

v.

SERGIO GUERRERO,
    *Defendant-Appellant.*

No. 21-10248

D.C. Nos.
4:19-cr-01468-CKJ-MSA-1
4:19-cr-01468-CKJ-MSA

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted June 16, 2022
San Francisco, California

Filed September 2, 2022

Before: Sidney R. Thomas, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Gould;
Concurrence by Judge Bea;
Dissent by Judge S.R. Thomas

## SUMMARY[*]

### Criminal Law

In a per curiam opinion, the panel affirmed the district court's denial of Sergio Guerrero's motion to suppress because of the consistent conclusions of Judge Gould and Judge Bea, which represent a majority of the panel, even though the reasoning of Judge Gould and Judge Bea in their separate concurrences is different.

The panel noted that one exception to the Fourth Amendment's prohibition of searches and seizures conducted without prior approval by judge or magistrate is a *Terry* stop, which allows an officer to briefly detain an individual when the officer has a reasonable articulable suspicion that an individual is engaged in a crime, during which stop an officer may also conduct a limited protective frisk if the officer has reason to believe the individual has a weapon. The panel noted that another exception is when an officer has probable cause to arrest an individual.

Judge Gould concurred on the grounds that Trooper Amick effected a *de facto* arrest supported by probable cause.

Judge Bea concurred on the grounds that Trooper Amick merely detained Guerrero and did not effectuate a *de facto* arrest, but that even if Trooper Amick had arrested Guerrero, there was probable cause to do so.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Thomas wrote that Trooper Amick's stop ripened into an arrest when he held Guerrero handcuffed, on a roadside, for approximately 40 minutes, waiting for federal officers to arrive; and that Trooper Amick had no probable cause to do so.

**COUNSEL**

J. Ryan Moore (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Defendant-Appellant.

Angela W. Woolridge (argued), Assistant United States Attorney; Christina M. Cabanillas, Deputy Appellate Chief; Gary M. Restaino, United States Attorney; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

PER CURIAM:

After the district court denied his motion to suppress, Sergio Guerrero pled guilty to smuggling ammunition in violation of 18 U.S.C. § 554(a). Guerrero timely appealed the denial of his motion to suppress. This appeal challenges that denial. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We review the district court's denial of a motion to suppress *de novo*. *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014). We review *de novo* mixed questions of law and fact, such as whether a seizure became a *de facto* arrest and whether an officer had reasonable suspicion or probable cause. *Id.*; *Ornelas v. United States*, 517 U.S. 690, 699 (1996)*.* We review whether the exclusionary rule applies *de novo* and the district court's underlying factual findings for clear error. *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (en banc).

The Fourth Amendment prohibits unreasonable searches and seizures by the government. U.S. Const. amend. IV. "Searches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject to only a few specifically established and well delineated exceptions.'" *United States v. Brown*, 996 F.3d 998, 1004 (9th Cir. 2021) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993)). One exception is a *Terry* stop, which allows an officer briefly to detain an individual when the officer has a reasonable articulable suspicion that an individual is engaged in a crime; an officer conducting a *Terry* stop may also conduct a limited protective frisk of the individual if the officer has reason to believe he or she has a

weapon. *Id.* at 1001; *Terry v. Ohio*, 392 U.S. 1, 21, 30 (1968). Another exception is when an officer has probable cause to arrest an individual. *Brown*, 996 F.3d at 1005. "In distinguishing between a *Terry* stop and a full-blown arrest, we consider whether a reasonable person would believe that he or she is being subjected to more than a temporary detention, as well as the justification for the use of such tactics, *i.e.*, whether the officer had sufficient basis to fear for his safety to warrant the intrusiveness of the action taken." *Id.* at 1006 (simplified and internal quotation marks omitted).

We affirm the denial of Guerrero's motion to suppress because of the consistent conclusions of Judge Gould and Judge Bea, representing a majority of the panel, that we should affirm the denial of the motion to suppress. Affirmance is required by the conclusions of the judges in the majority, even though the reasoning of Judge Gould and Judge Bea in their separate concurrences filed herewith is different. Subjoined to this brief opinion are (1) the separate concurrence of Judge Gould; (2) the separate concurrence of Judge Bea; and (3) the dissent of Judge S.R. Thomas.

---

GOULD, Circuit Judge, concurring:

I concur in affirming the denial of Guerrero's motion to suppress on the grounds that Trooper Amick effectuated a *de facto* arrest supported by probable cause.

## I

Trooper Amick effectuated a *de facto* arrest of Guerrero, which required probable cause. First, Trooper Amick detained Guerrero for approximately one hour. *Terry* stops

are brief detentions. *Id.* at 1005; *United States v. Place*, 462 U.S. 696, 709 (1983) ("[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion."). Here, Trooper Amick's detention of Guerrero for approximately one hour, while not dispositive on its own, *see United States v. Sharpe*, 470 U.S. 675, 685 (1985), is a strong indicator that Guerrero's detention was not just a *Terry* stop, but was actually an arrest.

Second, Trooper Amick handcuffed Guerrero while awaiting the arrival of federal agents. "Handcuffing as a means of detaining an individual does not automatically escalate a stop into an arrest, but it 'substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop.'" *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (quoting *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)). The circumstances surrounding Guerrero's handcuffing are particularly suggestive of intrusiveness beyond a *Terry* stop. Guerrero was handcuffed for a significant amount of time: thirty to forty minutes. Trooper Amick also handcuffed Guerrero despite the fact that Guerrero had been cooperative and respectful during the encounter. *See id.* at 940. And, Trooper Amick had also already searched Guerrero's car for weapons, further indicating that Guerrero was unlikely to be a threat.

In combination, (1) the length of the detention and (2) the use of handcuffs under the circumstances transformed Guerrero's detention into a *de facto* arrest. A reasonable person in Guerrero's situation would not have thought that they were free to leave. Instead, Guerrero was not free to leave, and a reasonable person would have

realized that departure was not possible. This was more than a brief detention akin to a *Terry* stop, it was a *de facto* arrest.

## II

Probable cause supported Guerrero's *de facto* arrest. Guerrero's car had heavily tinted windows. After Guerrero consented to a search of his car, Trooper Amick found 20,000 rounds of rifle and handgun ammunition in Guerrero's car, and the ammunition included rounds suitable for high-powered assault weapons. I give no weight to the fact Guerrero was driving southward towards the Mexican border on Highway 10. Highway 10 leads directly to Tucson, where Guerrero lived, and he was only stopped 23 miles north of Tucson. In these circumstances, if standing alone, a natural and reasonable inference would be that Guerrero was heading home, and no reasonable inference of criminal activity from this southward travel could be inferred. But the tinted windows and the massive amount of ammunition point in another direction: that Trooper Amick's stop had opened a window to a crime in process.

The central legal point that should govern our resolution of this case is that probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). Further, probable cause "is not a high bar: It requires only the 'kind of fair probability on which reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Here, there was probable cause that Guerrero was smuggling ammunition in violation of 18 U.S.C. § 554(a), which was

sufficient to support Trooper Amick's detaining Guerrero until federal agents arrived.

The extremely high volume of ammunition in the car called for extra caution and for bringing in federal authorities. During this era in which the Department of Justice is actively investigating threats such as domestic terrorism, it was reasonable for Trooper Amick to want to defer a decision about Guerrero until after federal authorities arrived and could make their own assessment. 20,000 rounds of high-powered ammunition could fuel significant illicit activities of a militia hostile to democracy or other highly dangerous criminal behavior. Although the possession of ammunition was not illegal in Arizona, the extremely large volume of ammunition here raises risks to society that needed to be assessed more carefully and could not be done by a lone state trooper. The federal authorities, with their special expertise and databases, were properly invited to assess the situation before Guerrero was sent on his way with the ammunition. It was reasonable for Trooper Amick to believe this, and reasonableness is indeed the touchstone of the Fourth Amendment so far as searches and detentions are concerned. *Kansas v. Glover*, 140 S. Ct. 1183, 1191 (2020) ("This Court's precedents have repeatedly affirmed that 'the ultimate touchstone of the Fourth Amendment is reasonableness.'") (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)).

I concur.

BEA, Circuit Judge, concurring:

I concur in affirming denial of Guerrero's motion to suppress. First, Trooper Amick merely detained Guerrero;

he did not effectuate a de facto arrest. Second, even if Trooper Amick had arrested Guerrero, there was probable cause to do so.

I

In determining when an investigatory stop becomes an arrest, courts must consider the "totality of the circumstances," *United States v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990), including "the severity of the intrusion, the aggressiveness of the officer's actions, and the reasonableness of the officer's methods." *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 940 (9th Cir. 2020). In evaluating the severity of the intrusion, courts consider "the brevity of the invasion on the individual's Fourth Amendment interests," *United States v. Sharpe*, 470 U.S. 675, 685 (1985), and "whether the officers 'diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.'" *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996) (quoting *Sharpe*, 470 U.S. at 686). Although "handcuffing is not part of a typical *Terry* stop," *United States v. Bautista*, 684 F.3d 1286, 1289 (9th Cir. 1982), an officer's use of handcuffs does not automatically "escalate a stop into an arrest" if the use of handcuffs is justified by the circumstances. *Reynaga Hernandez¸* 969 F.3d at 941.

The issue here is whether Trooper Amick's decision to prolong the stop until investigators from the Bureau of Alcohol, Tobacco, and Firearms (ATF) arrived escalated the stop into an arrest. This court has previously found that a detention did not become an arrest when the detention was prolonged to await the arrival of specialized federal officers. *See United States v. O'Looney*, 544 F.2d 385 (9th Cir. 1976); *United States v. Moore*, 638 F.2d 1171 (9th Cir. 1980).

In *O'Looney*, police suspected the defendant of illegally exporting firearms to the Irish Republican Army. *O'Looney*, 544 F.2d at 388. The defendant granted the police permission to search his vehicle, which revealed evidence that he was connected to another individual who was also suspected of being involved in illegal firearms exportation. *Id.* at 388. After the consensual search of his vehicle, the defendant was transported in a police car to the police station. *Id.* at 389. Police questioned the defendant at the station for about twenty minutes, and after determining that no violation of local law had been committed, placed the defendant in an interrogation room to wait for ATF agents. *Id.* The court held that the defendant was not arrested while he was held in the interrogation room to await ATF agents because "[i]t was not unreasonable to detain [the defendant] temporarily at the station to await the arrival of federal officers who are more familiar with the federal firearms laws and more experienced in their enforcement," particularly in light of the "secrecy and intrigue surrounding the purchase of an otherwise legal weapon." *Id*.

*O'Looney* is directly on point with the present case. In both cases, the defendant was suspected of using a legal object for an illegal purpose, namely for transporting firearms outside of the United States. In both cases, the defendant was temporarily detained by a state law enforcement officer until ATF officers could arrive to question the defendant about a federal crime. The major factual difference between the present case and *O'Looney* is that Guerrero was placed in handcuffs, and the defendant in *O'Looney* was not. But the defendant in *O'Looney* was transported to a police station, in a police car, and held in an interrogation room—conditions that arguably constitute a greater intrusion into an individual's liberty than the use of handcuffs. Thus, although Guerrero was detained for an

extended period and placed into handcuffs, he was not subject to a de facto arrest under the law of this circuit. *See also Moore*, 638 F.2d at 1173–74 (holding that appellants were not arrested when placed in the rear seat of a police car because it was necessary to secure appellants while awaiting the arrival of customs officers and the means of securing them was reasonable under the circumstances).

II

Even if the stop had constituted a de facto arrest, it was nevertheless supported by probable cause. I agree in substantial part with Judge Gould's analysis of the facts constituting probable cause, but I separately write to emphasize some particular details.

Probable cause "exists when . . . a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). The court considers the totality of circumstances because "the whole is often greater than the sum of its parts." *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018).

Guerrero was in possession of 7,000 rounds of 9mm ammunition and 13,000 rounds of 7.62x39mm ammunition. 9mm ammunition is used in handguns, and 7.62x39mm ammunition is used in AK-47 assault rifles, as well as certain light machine guns. Significant weight should be given to the fact that Guerrero possessed a large quantity of ammunition fit for use in high-powered assault weapons. Moreover, the large quantity of ammunition suggests that Guerrero intended the ammunition for commercial, rather than personal, use. But Guerrero was transporting this ammunition in a passenger car rather than a commercial vehicle. The incongruity between the commercial quantity

of ammunition and noncommercial type of vehicle strengthens the inference of illegal activity.

In addition, Guerrero told Trooper Amick he was returning home after visiting his mother. Carrying 20,000 rounds of ammunition in the back of one's vehicle is not consistent with an ordinary trip to one's mother's house. It is reasonable for this seemingly out-of-the-ordinary pattern of events to raise further suspicion.

When asked who owned the car, Guerrero first said it belonged to his sister "Jaqueline" then corrected himself and said it belonged to his sister "Martha." The dissent places little weight on the fact that Guerrero initially named the wrong sister, noting that Guerrero gave only one inconsistent answer. I disagree with this assessment of the facts. Although Guerrero's naming of the wrong sister could reasonably be interpreted as a benign mistake, it could also be indicative of nervousness, increasing a reasonable officer's suspicion of illegal activity. Also, as discussed above, multiple aspects of Guerrero's story were inconsistent, including the fact that he was returning from his mother's house with a large amount of ammunition, and the fact that he was carrying a commercial quantity of ammunition in a personal vehicle. When taken together, these inconsistencies increase the reasonable possibility of criminal activity.

The dissent gives little weight to Guerrero's use of tinted windows, to Guerrero's proximity to the border, and to Guerrero's southward direction of travel. Although each of these facts, standing alone, may offer only a slight basis for suspicion, the probable cause analysis must be based on a totality of the circumstances. *Wesby*, 138 S. Ct. at 586. The question is not whether Guerrero's tinted windows or proximity to the border were independently sufficient to

create probable cause for arrest, but whether Guerrero's proximity to the border, use of tinted windows, proffering of inconsistent statements, and possession of a large quantity of assault-rifle ammunition in a passenger vehicle heading south all combine to create a fair probability that Guerrero was engaging in illegal activity. I believe that they do.

On a final note, Judge Gould's concerns about domestic terrorism are misplaced. The language in his concurrence regarding "illicit activities of a militia hostile to democracy" undoubtedly refers to the January 6, 2021, attack on the United States Capitol. But the events in the present case took place in April of 2019, nearly two years prior to the events of January 6, 2021. There is nothing in the record to suggest that Trooper Amick was concerned about domestic terrorism at the time of the detention, and such a concern would not be reasonable under the circumstances.

For these reasons, I concur.

S.R. THOMAS, Circuit Judge, dissenting:

I respectfully dissent from the panel majority's affirmance. I would reverse the district court. Trooper Amick's stop ripened into an arrest when he held Guerrero handcuffed, on a roadside, for approximately 40 minutes, waiting for federal officers to arrive. Trooper Amick had no probable cause to do so. Thus, I agree with the Magistrate Judge's findings and recommendations, and would reverse the district court's denial of the suppression motion.

I

There are two aspects to this stop that make it unreasonably intrusive in light of the circumstances. The first is Trooper Amick's unjustified use of handcuffs. The second is Trooper Amick's decision to cease his investigation for 40 minutes to wait for more experienced officers to arrive.

During a *Terry* stop "police may not carry out a full search of the person or of his automobile or other effects. Nor may the police seek to verify their suspicions by means that approach the conditions of arrest." *Florida v. Royer*, 460 U.S. 491, 499 (1983) (plurality opinion). For a brief investigatory stop to retain its character as a *Terry* stop, it must "last no longer than is necessary to effectuate the purpose of the stop . . . . [and] the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Id.* at 500.

An officer's use of handcuffs does not automatically "escalate a stop into an arrest" where handcuff use is justified by the circumstances, including:

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Reynaga Hernandez v. Skinner*, 969 F.3d 930, 940 (9th Cir. 2020) (quoting *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996)).

In this case, Trooper Amick placed Guerrero in handcuffs following initial questioning. The record is undisputed that Guerrero was "super cooperative," "very respectful," and "nothing but courteous" throughout their encounter. During the Trooper's consensual search of Guerrero's car, Guerrero obeyed instructions to stand approximately 30 feet from the vehicle. Guerrero's demeanor was entirely consistent with lawful behavior. The Trooper had no information Guerrero was armed; indeed, he had already searched the car for weapons. The stop did not follow a violent crime; Guerrero was stopped for a window tint violation. And Trooper Amick had no information that a crime of violence was about to occur. In sum, the handcuffing was not justified under *Lambert.*

The second aspect of the detention that indicates the *Terry* stop had transformed into a de facto arrest is the length of the detention. A *Terry* stop must "last no longer than is necessary to effectuate the purpose of the stop[.]" *Royer*, 460 U.S. at 500. "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696, 709 (1983); *see also United States v. Jennings*, 468 F.2d 111, 115 (9th Cir. 1972) (holding that, after an initial investigative inquiry on the street is completed, continued detention of an individual for fingerprinting and photographing is constitutionally invalid without probable cause to arrest). "[I]n assessing the effect of the length of the detention, [a court] take[s] into account

whether the police diligently pursue[d] their investigation." *Place*, 462 U.S. at 709.[1]

In this case, Trooper Amick's initial investigation of the tinted window violation resolved quickly. The Trooper's subsequent investigation of his suspicion of smuggling activity took approximately 20 minutes. Following the Trooper's call to the federal authorities, Guerrero was detained in handcuffs for an additional 40 minutes, without Trooper Amick conducting any further investigation. Thus, the Trooper did not "diligently pursue a means of investigation that was likely to quickly dispel his suspicion" of smuggling goods from the United States. *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996) (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Indeed, the Trooper put his investigation on hold for an additional 40 minute detention after completing the search of the vehicle. In other words he chose a means of further investigation—waiting for federal officers—that necessitated considerable delay.

In short, the confluence of the handcuffs and 40 minute delay after completion of the initial investigation exceeded the scope of a brief investigatory detention. At no point was Guerrero free to leave. Thus, under these circumstances, the extended detention constituted a de facto arrest.

---

[1] Although there is no bright line rule as to the detention time deemed to be unreasonable, *see Place*, 462 U.S. at 709, the American Law Institute's Model Code for Pre-Arraignment Procedure states that a *Terry* detention should be "for such period as is reasonably necessary for the accomplishment of the purposes authorized . . . but in no case for more than twenty minutes." § 110.2(1) (1975); *see Place*, 462 U.S. at 709 n.10.

II

Trooper Amick lacked probable cause for the arrest. "Probable cause to arrest exists when . . . . [given the facts] known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citations omitted). Although it "is not a high bar," *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018), it requires more than "[m]ere suspicion, common rumor, or even strong reason to suspect," a crime is being committed, *Lopez*, 482 F.3d at 1072. Rather than viewing each fact in isolation, a court reviews the totality of circumstances because "the whole is often greater than the sum of its parts." *Wesby*, 138 S. Ct. at 588. And, where innocent facts form the basis for an officer's suspicion, "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* (citation omitted). "Probable cause is an objective standard." *Lopez*, 482 F.3d at 1072.

There are five facts which the probable cause determination is defended: (1) the amount of ammunition; (2) the type of ammunition; (3) the tinted window violation; (4) the car's proximity to the border and south-bound route; and (5) Guerrero's contradictory answers to Trooper Amick's questions. I agree with this assessment of the relevant facts with one exception. Guerrero gave only one contradictory answer. He first told Trooper Amick the car belonged to his sister "Jacqueline" but then he corrected himself and said it belonged to "Martha." The Magistrate Judge determined that Trooper Amick did not find this misstatement unusual or suspicious, and the district court adopted this finding. Although the probable cause inquiry is

objective, *Lopez*, 482 F.3d at 1072, like the district court, I place little weight on this fact.

The suspicion inquiry hinges on three facts: Guerrero's possession of 20,000 rounds of rifle and handgun ammunition, the tinted automobile windows, and Guerrero's southbound travel in the general direction of Mexico. As the last two facts are almost entirely benign, I begin with those.

Guerrero was stopped traveling southeasterly on Highway 10 about 23 miles from Tucson, and almost 90 miles from the Mexican border. The district court characterized this corridor as a "common smuggling route," However, highway 10 is the artery connecting Arizona's two largest cities, Tucson and Phoenix. The Supreme Court has listed proximity to the border as a factor in assessing reasonable suspicion. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975). However, it has also cautioned against placing much weight on heavily trafficked highways with "a large volume of legitimate traffic." *Id.* at 882. In this case, the fact that Guerrero was north of Tucson, a city with a metro area of over a million people *and his home*, renders the direction of this travel relatively innocuous. The officer's examination of Guerrero's driver's license verified that he lived in Tucson. Had Guerrero been on the south side of Tucson heading towards the border, or on a back road, perhaps this fact would be more suggestive of intent to smuggle goods out of the country. But he was on a busy Interstate north of Tucson, proceeding in the direction of his home in Tucson, and some 90 miles away from the Mexican border.

Turning to the tinted windows, it is noteworthy that Guerrero did nothing further to conceal the ammunition, which tends to undermine the significance of this fact. Guerrero did not cover the ammunition with a tarp or

otherwise attempt to hide it and, when asked, freely gave his consent for Trooper Amick to search his car—which rendered any benefit from the window tint fruitless. In sum, the fact of tinted windows does not independently support probable cause, and adds little to a collective analysis.

The only question then is what reasonable inferences can be drawn from the fact that Guerrero legally possessed 20,000 rounds of ammunition. There was no suggestion that he possessed the ammunition illegally, and Guerrero made no effort to conceal it. When an officer becomes suspicious on the basis of noncontraband materials, an officer does not have probable cause of criminal activity unless the officer has more information about how the suspect intends to use the item. *See United States v. Tate*, 694 F.2d 1217, 1221 (9th Cir. 1982), *vacated on other grounds*, 468 U.S. 1206 (1984).

Here, there was no additional information or other indication of illegal activity. As the Magistrate Judge pointed out, "Defendant freely told Trooper Amick that he was carrying that amount of ammunition." The Magistrate Judge further noted that the "Defendant's demeanor was perfectly consistent with lawful behavior." Significantly, Trooper Amick never asked Guerrero what he was doing with 20,000 rounds of ammunition or asked any other questions about it. And the possession of it was unquestionably legal.

Given the negligibly suspicious value of the surrounding facts, here, the "whole is [*not*] greater than the sum of its parts." *See Wesby*, 138 S. Ct. at 588 (citing *Arvizu*, 543 U.S. at 277–78). Although probable cause is not a high bar, a reasonable officer in Trooper Amick's shoes would have, at

most, a "strong reason to suspect" smuggling, which is not enough under our case law.

For these reasons, I respectfully dissent.